# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| TROY NORTON, Individually and on Behalf of All Others Similarly Situated,<br><br>          Plaintiff,<br>v.<br><br>VAN RU CREDIT CORPORATION,<br><br>          Defendant. | Case No.: 18-cv-1224<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA"), and the Wisconsin Consumer Act, chapter 427, Wisconsin Statutes (the "WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k, and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Troy Norton is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt allegedly incurred for personal, family, or household purposes, specifically, a consumer credit account.

5. Plaintiff is also a "customer" as defined in the Wisconsin Consumer Act, Wis. Stat. § 421.301(17), in that the alleged debt allegedly arose from consumer transaction that included agreements to defer payment, namely a consumer credit account.

6. Defendant Van Ru Credit Corporation ("Van Ru") is a foreign corporation with its principal place of business located at 4839 North Elston Avenue, Chicago, Illinois 60630.

7. Van Ru is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. Van Ru is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

9. Van Ru is licensed as a "Collection Agency" under Wis. Stat. § 218.04 and. Wis. Admin. Code Ch. DFI-Bkg 74.

10. Van Ru is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

## FACTS

11. Prior to February 24, 2018, Plaintiff had a Discover credit card account, issued by Discover Bank ("Discover"), and used only for personal, family, or household purposes.

12. On or about February 24, 2018, Discover mailed an account statement to Plaintiff regarding an alleged debt, allegedly owed to Discover and associated with Plaintiff's Discover credit account ending in 3863. A copy of this account statement is attached to this complaint as Exhibit A.

2

13. <u>Exhibit A</u> contains the following:



. . .

<u>Exhibit A</u>.

14. <u>Exhibit A</u> states that, as of February 24, 2018, Plaintiff's account ending in 3863 had a "New Balance" of $2,482.38, with a "Payment Due Date" of March 19, 2018, and a "Minimum Payment Due" of $750.00.

15. On or about August 22, 2017, Van Ru mailed Plaintiff a debt collection letter regarding the same alleged debt, allegedly owed to "Discover Bank." A copy of this debt collection letter is attached to this complaint as <u>Exhibit B.</u>

16. Upon information and belief, <u>Exhibit B</u> is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

3

17. Upon information and belief, Exhibit B is a form debt collection letter, generated by computer, and used by Defendant to attempt to collect alleged debts.

18. Upon information and belief, Exhibit B was the first letter that Defendant sent to Plaintiff with respect to the alleged debt referenced in Exhibit B.

19. Exhibit B contains the statutory debt validation notice that the FDCPA, 15 U.S.C. § 1692g, requires that debt collectors send debtors along with, or within five days of, their initial communications:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different from the current creditor.

Exhibit B.

20. Exhibit B also states:

> Creditor: Discover Bank
>
> Discover Card Acct#            Balance
> *************3863              2482.38
>
> The above account(s) has been placed with us for collection. This is an important matter and deserves your attention.

Exhibit B.

21. Exhibit B also contains a payment remittance slip, which contains the following:

> March 06, 2018                VR File #: ▓▓▓6584
>                               Balance: $2482.38

Exhibit B.

22. Exhibit B, mailed on March 6, 2018, almost two weeks before the "Payment Due Date" stated in Exhibit A (March 19, 2018), states the "Balance" is $2,482.38.

23. Exhibit B does not state that Plaintiff could return the account to a current status by making a minimum payment of $750.00, roughly 25% of the total account balance.

4

24. Exhibit B does not state any amount it is attempting to collect other than the "Balance" of $2,482.38.

25. Exhibit B, thus, represents that the debt had been accelerated and the full balance was due when Exhibit B was mailed.

26. Van Ru's representation in Exhibit B that Plaintiff's account had a "Balance" of $2,482.38 is false, deceptive, misleading, and unconscionable.

27. According to Exhibit A, as of March 6, 2018, when Van Ru mailed Exhibit B, Plaintiff's account a "Minimum Payment Due" of $750.00, and a "Payment Due Date" of March 19, 2018. Exhibit A.

28. The unsophisticated consumer cannot determine whether the debt had been accelerated or not, or how much debt is actually due as of the date of Exhibit B. Exhibit B states that the "Balance" is $2,482.38 while Exhibit A states that the "Minimum Payment Due" is only $750.00. *See Machnik v. RSI Enters.*, 2017 U.S. Dist. LEXIS 160772, at *6 (E.D. Wis. Sept. 29, 2017) ("In the context of a debt, 'owing' an amount is distinguishable from the amount 'due.'"); *see also Chuway v. Nat'l Action Fin. Servs.*, 362 F.3d 944, 948 (7th Cir. 2004) ("Suppose she had called and discovered that her current balance was $ 567.42. She wouldn't know whether to mail $ 367.42 to the defendant or $ 567.42, without making a further inquiry. She might pay the larger amount thinking she would be sued otherwise, even though the extra $ 200 might not yet be due, let alone overdue.").

29. Van Ru's representation in Exhibit B that Van Ru was attempting to collect the "Balance" of $2,482.38 is false, deceptive, misleading, and unconscionable.

30. Upon information and belief, Discover had not accelerated the balance when Exhibit B was mailed to Plaintiff.

5

31. Van Ru represented the amount of the debt in a way that was confusing to the unsophisticated consumer and misrepresented the amount of the debt.

32. Additionally, <u>Exhibit B</u> also contains the following:

> Your payment, made payable to Discover Bank, may be mailed in the enclosed envelope. If you have any questions, or wish to discuss your account or payment options, you may contact us at 877-278-2341. You may also visit us online at www.vanruezpay.com. To access your account online, your user id is ▬6584 and your PIN number is ▬4417.

<u>Exhibit B</u>.

33. The instruction in <u>Exhibit B</u> that the consumer should contact the debt collector by telephone "if you have any questions, or wish to discuss your account or payment options" is false, deceptive, and misleading to the unsophisticated consumer because it contradicts, overshadows, and confuses the debt validation notice and encourages the consumer to forego her verification rights by communicating disputes orally rather than in writing:

15 U.S.C. § 1692g(a)(4) states:

(a) Notice of debt; contents

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
> …
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector;

34. To trigger verification rights, the debtor must provide the debt collector with written notification that there is a dispute. 15 U.S.C. § 1692g(a)(4); *see McCabe v. Crawford & Co.*, 272 F. Supp. 2d 736, 743 (N.D. Ill. July 8, 2003) ("If the debtor gives only *oral* notification of the dispute, the FDCPA imposes no requirement on the debt collector to obtain verification of

6

the debt.") (citing *Fasten v. Zager*, 49 F. Supp. 2d 144, 149 (E.D.N.Y. May 20, 1999)); *see also, Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268, 1273-74 (11th Cir. 2016).

35. Upon receiving a *written* dispute from the consumer within the 30-day debt validation period, the FDCPA requires the debt collector to contact the creditor and obtain verification of the debt before conducting any further collection efforts. 15 U.S.C. § 1692g(b):

> (b) Disputed debts
>
> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

36. Disputing a portion of the balance as not yet due is one of the most common reasons a consumer would dispute a debt under the FDCPA, and is specifically addressed as one reason the consumer may dispute a debt. 15 U.S.C. § 1692g(a)(4) ("if the consumer notifies the debt collector in writing within the thirty-day period that the debt, *or any portion thereof*, is disputed . . ."); *see also, e.g., Chuway*, 362 F.3d at 948; *Machnik*, 2017 U.S. Dist. LEXIS 160772, at *6.

37. Communications from consumers who "wish to discuss [their] account" are in the nature of disputes under the FDCPA. *See Gruber v. Creditors' Prot. Serv.*, 742 F.3d 271, 274

7

(7th Cir. 2014) (request to verify an account is a dispute, because "unsophisticated consumers cannot be expected to assert their rights in legally precise phrases.")

38. <u>Exhibit B</u> confusingly directs the debtor to notify the debt collector about disputes over "payment options" without informing the consumer that these disputes must be communicated in writing in order to trigger verification. *See Osborn v. Ekpsz, LLC*, 821 F.Supp.2d 859, 868, 870 (S.D. Tex. Sept. 26, 2011) (collecting cases and concluding that "[e]very district court to consider the issue has held that a debt collector violates §1692g(a) by failing to inform consumers that requests under subsections(a)(4) and (a)(5) must be made in writing."); *see also, McCabe v. Crawford & Co.*, 272 F. Supp. 2d 736, 743-44 (N.D. Ill. July 8, 2003) (omitting the words "in writing" from the validation notice conflicted with and overshadowed the consumer's statutory right to trigger verification); *Chandler v. Eichel*, 2017 U.S. Dist. LEXIS 156168, at *9 (S.D. Ind. Sept. 25, 2017); *Crafton v. Law Firm of Levine*, 957 F.Supp.2d 992, 998 (E.D. Wis. July 9, 2013); *Bicking v. Law Offices of Rubenstein & Cogan*, 783 F.Supp.2d 841, 845 (E.D. Va. May 5, 2011); *Welker v. Law Office of Daniel J. Horowitz*, 699 F.Supp.2d 1164, 1170 (S.D. Cal. 2010); *Beasley v. Sessoms & Rogers, P.A.*, 2010 U.S. Dist. LEXIS 52010 (E.D. N.C. Mar. 1, 2010); *Nero v. Law Office of Sam Streeter, P.L.L.C.*, 655 F.Supp.2d 200, 206 (E.D.N.Y. Sept. 10, 2009); *Chan v. N. Am. Collectors, Inc.*, 2006 U.S. Dist. LEXIS 13353, at *16 (N.D. Cal. Mar. 24, 2006); *Grief v. Wilson, Elser, Moskowitz, Edelman & Dicker, LLP*, 217 F.Supp.2d 336, 340 (E.D.N.Y. Aug. 19, 2002); *Carroll v. United Compucred Collections*, 2002 U.S. Dist. LEXIS 25032, at *28 (M.D. Tenn. Nov. 15 2002); *Woolfolk v. Van Ru Credit Corp.*, 783 F. Supp. 724, 726 (D. Conn. Oct. 2, 1990).

39. Van Ru's instruction, which is offset and easily read, would confuse and mislead consumers who wish to dispute debts to believe that a debtor who disputes her debt orally is

8

entitled to the same protections as if she had communicated her dispute in writing, when she is not so entitled. *See Camacho v. Bridgeport Fin., Inc.*, 430 F.3d 1078, 1082 (9th Cir. 2005).

40. The overshadowing effect is compounded because Van Ru states the balance without stating a minimum payment, and directs consumers to telephone Van Ru with questions about "payment options" --- for example, payment of the minimum payment due rather than the entire balance. *See e.g., Woolfolk v. Van Ru Credit Corp.*, 783 F. Supp. 724, 726 (D. Conn. Oct. 2, 1990) ("The invitation to telephone unaccompanied by any warning that the notice must be in writing to be effective obscures the dispute validation notice required by 15 U.S.C. § 1692g."); *see also, Muha v. Encore Receivable Mgmt.*, 558 F.3d 623, 629 (7th Cir. 2009) ("Confusing language in a dunning letter can have an intimidating effect by making the receipient feel that he is in over his head and had better pay up rather than question the demand for payment."); *see also Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, LLC*, 214 F.3d 872, 875 (7th Cir. 2000) ("to authorize debt collectors to comply orally would be just an invitation to the sort of fraudulent and coercive tactics in debt collection that the Act aimed (rightly or wrongly) to put an end to.").

41. Plaintiff was confused by <u>Exhibits A and B</u>.

42. The unsophisticated consumer would be confused by <u>Exhibits A and B</u>.

43. Plaintiff had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of <u>Exhibits A and B</u>.

### *The FDCPA*

44. The FDCPA states that its purpose, in part, is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). It is designed to protect

consumers from unscrupulous collectors, whether or not there is a valid debt. *Mace v. Van Ru Credit Corp.,* 109 F.3d 338 (7th Cir. 1997); *Baker v. G.C. Services Corp.,* 677 F.2d 775, 777 (9th Cir. 1982); *McCartney v. First City Bank,* 970 F.2d 45, 47 (5th Cir. 1992). The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements in connection with the collection of a debt; it also requires debt collectors to give debtors certain information. 15 U.S.C. §§ 1692d, 1692e, 1692f and 1692g.

45. The Seventh Circuit has held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of an "unsophisticated consumer." *Avila v. Rubin,* 84 F.3d 222, 227 (7th Cir. 1996); *Gammon v. GC Services, LP,* 27 F.3d 1254, 1257 (7th Cir. 1994). The standard is an objective one—whether the plaintiffs or any class members were misled is not an element of a cause of action. *Bartlett v. Heibl,* 128 F.3d 497, 499 (7th Cir. 1997). "The question is not whether these plaintiffs were deceived or misled, but rather whether an unsophisticated consumer would have been misled." *Beattie v. D.M. Collections Inc.,* 754 F. Supp. 383, 392 (D. Del. 1991).

46. Because it is part of the Consumer Credit Protection Act, 15 U.S.C. §§ 1601 *et seq.*, the FDCPA should be liberally construed in favor of the consumer to effectuate its purposes. *Cirkot v. Diversified Fin. Services, Inc.,* 839 F. Supp. 941, 944 (D. Conn. 1993).

> The [Consumer Credit Protection] Act is remedial in nature, designed to remedy what Congressional hearings revealed to be unscrupulous and predatory creditor practices throughout the nation. Since the statute is remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated.

*N.C. Freed Co. v. Board of Governors,* 473 F.2d 1210, 1214 (2d Cir. 1973).

47. Statutory damages are recoverable for violations, whether or not the consumer proves actual damages. *Baker,* 677 F.2d at 780-1; *Woolfolk v. Van Ru Credit Corp.,* 783 F. Supp. 724, 727 and n. 3 (D. Conn. 1990); *Riveria v. MAB Collections, Inc.,* 682 F. Supp. 174, 177 (W.D.N.Y. 1988); *Kuhn v. Account Control Tech.*, 865 F. Supp. 1443, 1450 (D. Nev. 1994); *In re Scrimpsher*, 17 B.R. 999, 1016-7 (Bankr. N.D.N.Y. 1982); *In re Littles,* 90 B.R. 669, 680 (Bankr. E.D. Pa. 1988), *aff'd as modified sub nom. Crossley v. Lieberman,* 90 B.R. 682 (E.D. Pa. 1988), *aff'd*, 868 F.2d 566 (3d Cir. 1989).

48. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to

11

standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes . . . do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

49. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive

12

debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

50. 15 U.S.C. § 1692e prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

51. 15 U.S.C. § 1692e(2)(A) specifically prohibits: "The false representation of — the character, amount, or legal status of any debt."

52. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

53. 15 U.S.C. § 1692f generally prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

54. 15 U.S.C. § 1692f(1) specifically prohibits the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

55. 15 U.S.C. § 1692g(a) states:

a) **Notice of debt; contents**

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

*The WCA*

56. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

57. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

58. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

59. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

60. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

61. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

14

62. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

63. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

64. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer . . . in such a manner as can reasonably be expected to threaten or harass the customer."

65. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer . . . ."

66. Wis. Admin. Code § DFI-Bkg 74.16(9) states that a licensed collection agency can reasonably be expected to harass the customer when it engages in "conduct which violates the Federal Fair Debt Collection Practices Act."

67. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

68. Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

15

## COUNT I – FDCPA

69. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

70. Van Ru was aware that Discover had sent Plaintiff an account statement stating Plaintiff's account had a "Minimum Payment Due" of $750.00, and a "Payment Due Date" of March 19, 2018.

71. Van Ru falsely represented to Plaintiff that Plaintiff's Discover account had been accelerated on March 6, 2018 by seeking to collect the entire balance and not just the amount actually due.

72. Van Ru misrepresented the amount, character, and legal status of the debt it was collecting.

73. Van Ru's attempts to collect the entire balance of class members' Discover accounts were false, misleading and confusing representations, and were also an unfair and unconscionable means of collecting a debt.

74. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), 1692(f), 1692f(1), and 1692g(a)(1).

## COUNT II – WCA

75. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

76. Van Ru is licensed as a "Collection Agency" pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-Bkg. 74.

16

77. Van Ru was aware that Discover had sent Plaintiff an account statement stating Plaintiff's account had a "Minimum Payment Due" of $750.00, and a "Payment Due Date" of March 19, 2018.

78. Van Ru represented to Plaintiff that Plaintiff's Discover account had been accelerated on March 6, 2018 by seeking to collect the entire balance and not just the amount actually due.

79. Van Ru misrepresented the amount, character, and legal status of the debt it was collecting.

80. Van Ru's attempts to collect the entire balance of class members' Discover accounts were false, misleading and confusing representations, and were also an unfair and unconscionable means of collecting a debt.

81. Van Ru's engaged in conduct that violates the FDCPA.

82. Van Ru's conduct can reasonably be expected to threaten or harass the consumer.

83. Defendant violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

## COUNT III - FDCPA

84. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

85. By stating "if you have any question, or wish to discuss your account or payment options you may contact us at 877-278-2341," Exhibit B misleads the unsophisticated consumer by encouraging them to dispute their alleged debt via telephone, which does not trigger the same validation writes as a written dispute.

17

86. By stating "if you have any question, or wish to discuss your account or payment options you may contact us at 877-278-2341," Exhibit B overshadows the validation notice.

87. Defendant violated 15 U.S.C. §§ 1692e, 1692e(10), 1692(f), 1692f(1), and 1692g(b).

## CLASS ALLEGATIONS

88. Plaintiff brings this action on behalf of two Classes.

89. Class I ("Nationwide Class") consists of (a) all natural persons in the United States of America (b) who were sent an account statement in the form of Exhibit A stating that the person could make a minimum payment by a "Payment Due Date" certain, (c) and subsequently sent an initial collection letter in the form of Exhibit B that stated only a "Balance," (d) where the collection letter in the form of Exhibit B was mailed prior to the "Payment Due Date" certain stated in the account statement in the form of Exhibit A, (e) and the alleged debt was owed to Discover, and incurred for personal, family or household purposes, (f) where the collection letter in the form of Exhibit B was mailed between August 9, 2017 and August 9, 2018, inclusive, (g) and neither the account statement nor the collection letter was returned by the postal service.

90. Class II ("Wisconsin Class") consists of (a) all natural persons in the United States of America (b) who were sent an account statement in the form of Exhibit A stating that the person could make a minimum payment by a "Payment Due Date" certain, (c) and subsequently sent an initial collection letter in the form of Exhibit B that stated only a "Balance," (d) where the collection letter in the form of Exhibit B was mailed prior to the "Payment Due Date" certain stated in the account statement in the form of Exhibit A, (e) and the alleged debt was owed to Discover, and incurred for personal, family or household purposes, (f) where the

18

Case 2:18-cv-01224-PP    Filed 08/09/18    Page 18 of 20    Document 1

collection letter in the form of Exhibit B was mailed between August 9, 2017 and August 9, 2018, inclusive, (g) and neither the account statement nor the collection letter was returned by the postal service..

91. Each Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of each Class.

92. There are questions of law and fact common to the members of each class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Exhibit B violates the FDCPA and/or the WCA.

93. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

94. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

95. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

96. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a)   actual damages;

(b)   statutory damages;

(c)   attorneys' fees, litigation expenses and costs of suit; and

(d)   such other or further relief as the Court deems proper.

Dated: August 9, 2018.

           **ADEMI & O'REILLY, LLP**

      By: /s/ Mark A. Eldridge
         John D. Blythin (SBN 1046105)
         Mark A. Eldridge (SBN 1089944)
         Jesse Fruchter (SBN 1097673)
         Ben J. Slatky (SBN 1106892)
         3620 East Layton Avenue
         Cudahy, WI 53110
         (414) 482-8000
         (414) 482-8001 (fax)
         jblythin@ademilaw.com
         meldridge@ademilaw.com
         jfruchter@ademilaw.com
         bslatky@ademilaw.com